### STOTT v. UNITED STATES.

No. 45650.

Court of Claims.

Jan. 8, 1945.

This case having been heard by the Court of Claims, the court, upon the evidence and the report of a commissioner, makes the following special findings of fact:

1. Plaintiff was commissioned an ensign in the United States Navy on June 2, 1938, which rank he held until June 2, 1941, when he was commissioned lieutenant, junior grade. He held the latter rank until June 2, 1942, when he was commissioned lieutenant, senior grade, and which rank he has held since that time. He was a bachelor officer until July 17, 1942, when he was married.

2. Plaintiff's father died intestate April 9, 1925. He left $2,000 in insurance to his widow, plaintiff's mother, and she and her three children inherited from him a house in Albuquerque, New Mexico. The house was heavily mortgaged and the widow received about $750 from her interest in it which was paid to her about 1926. The insurance money as well as the money realized from the interest in the house was spent by plaintiff's mother prior to 1939.

3. Plaintiff's mother is more than fifty-five years of age and is in poor health. Since September 1, 1939, she has held no gainful employment and has owned no income-producing personal property but has owned certain real estate as hereinafter shown.

4. In April or May 1938, plaintiff's mother purchased at public auction for $75 a fishing pier located in Lewes, Delaware, which belonged to her father's estate. While she still owns the pier, a large part of it was destroyed by ice during January 1940 and she has not had the funds with which to repair it. Before its partial destruction she realized an income of from $350 to $400 a year from fees charged fishing parties using the pier. That income was earned during the summer months of 1938 and 1939 but she has realized no income of any consequence from the pier since September 1939.

5. In November 1938, plaintiff's mother purchased at public auction from her father's estate a house in Lewes, Delaware, for the sum of $3,201. She made a cash payment of $701 and obtained a mortgage on the house for the balance of $2,500, which

mortgage provided that it should be paid off at the rate of $25 a month. The cash payment of $701 was made up in part from a small amount of cash received from her father's estate and in part from money which she had realized from the operation of the fishing pier.

6. Prior to the death of her father in 1934, plaintiff's mother sold health, accident, and automobile insurance but she gave up this work after his death. Since 1934 and including the years involved in this claim she has realized approximately $5 a month as renewal commissions on insurance which she had sold in and prior to 1934.

7. From September 1939 to June 1941, for nine months of each year, plaintiff's mother received $35 a month from each of two school teachers to whom she furnished room and board. Since June 1941, she has rented rooms in her home from which she has received an average gross income of approximately $25 a month. How much of the amounts received in the foregoing manner represented profit is not shown from the record other than that such amounts helped in the payment of fuel bills and other necessary expenses incurred in connection with the maintenance of the mother's home.

8. Since September 1, 1939, plaintiff's mother has lived in her home at Lewes, Delaware, referred to in finding 5. Her living expenses have amounted to approximately $100 a month including payments on interest and principal of mortgage, food, coal and oil, gas, electricity, telephone, taxes, insurance, medical expenses, clothing, and miscellaneous items.

9. Plaintiff's mother has two children besides plaintiff—a son, Robert, twenty-seven years of age, and a daughter, Elizabeth, twenty-four years of age. These two children are unmarried and neither has lived with the mother since September 1939.

Robert was employed in the Lighthouse Service from sometime prior to 1938 until 1940 when that service was merged with the Coast Guard and he entered the latter service as an enlisted man. He now holds the grade of boatswain's mate, first class. Prior to June 1938, he contributed approximately $30 a month to his mother and since plaintiff was commissioned an ensign in June 1938, Robert has contributed approximately $15 a month.

Elizabeth finished college in June 1941 and then taught school until about July 1943 when she was commissioned an ensign in the "Waves." She has never contributed anything to her mother's support except for occasional presents of clothing and items of that character during the period when she was teaching.

10. Plaintiff regularly contributed $45 a month in cash toward his mother's support from June 2, 1938 to June 2, 1941; $60 a month from June 3, 1941 to June 2, 1942; and $75 a month thereafter. In addition, plaintiff carried during all this time $10,000 in a Government insurance policy in which his mother was named as the beneficiary, and paid premiums on it of not less than $7 per month.

11. Plaintiff's contributions constituted his mother's chief support from September 1, 1939 to July 17, 1942, the date of his marriage.

Fred W. Shields, of Washington, D. C. (King & King, of Washington, D. C., on the brief), for plaintiff.

Brice Toole, of Washington, D. C., and Francis M. Shea, Asst. Atty. Gen., for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

MADDEN, Judge.

The plaintiff, an officer in the Navy, claims that he was, for the period September 1, 1939 to July 17, 1942, the chief support of his mother, and should have been paid the increased rental and subsistence allowances which the statutes authorized for an officer with a dependent mother. The statutes relied on for the period before June 1, 1942, are Sections 4, 5, and 6 of the Act of June 10, 1922, 42 Stat. 625, as amended by the Act of May 31, 1924, 43 Stat. 250, 37 U.S.C.A. §§ 8–10. The pertinent statutory provisions for the period after June 1, 1942, are Sections 4, 5, and 6 of the Act of June 16, 1942, 56 Stat. 359, 37 U.S.C.A. §§ 104–106.

Finding 8 shows the amount of the mother's living expenses, and finding 10 the amount of the plaintiff's contributions toward those expenses during the period on which this claim is based. The Government concedes that from June 3, 1941, the plaintiff was his mother's chief support, since he contributed $60 per month toward her living expenses of $100 per month. It urges that, up to June 3, 1941, he had only contributed $45 per month; hence was not her

792

chief support for the period. The plaintiff urges that since his cash contributions, averaged over the entire period of the claim, constituted more than one-half of the mother's living expenses for the entire period, he was her chief support within the meaning of the statute. The plaintiff also urges that even during the period preceding June 3, 1941, when he was contributing only $45 toward her expenses of $100, he was her chief support, though his contribution was less than one-half of her expenses. He further urges that there should be added to the amount of his cash contributions the amount, more than $7 per month,[1] which he paid as premiums on a policy of Government insurance, of which his mother was the beneficiary.

We think the plaintiff was the mother's chief support during the period in question. His cash contribution of $45 per month was substantially one-half of her expenditures, was her largest source of income and without it she would have been in financial distress. See Chester V. Freeland v. United States, 64 Ct.Cl. 364. We think there is some merit in the plaintiff's other two asserted grounds of recovery, as we have stated them above, but it is not necessary for us to decide whether they or either of them would be sufficient.

The plaintiff is entitled to recover. The computation of the amount will be based upon our decision in Mumma v. United States, 99 Ct.Cl. 261. Entry of judgment will await the receipt of a report from the General Accounting Office showing that computation.

It is so ordered.

WHALEY, Chief Justice, and WHITAKER and LITTLETON, Judges, concur.

JONES, Judge, took no part in the decision of this case.

[1] See the Veterans Administration Pamphlet, Insurance Form 398, Information and Premium Rates, National Service Life Insurance, August 1941.